UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NANCY JAKOBS,                )    Case No. EDCV 08-1024 JC
                            )
        Plaintiff,          )
                            )    MEMORANDUM OPINION
        v.                  )
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security,                   )
                            )
        Defendant.          )
_____ )

I.    **SUMMARY**

On August 7, 2008, plaintiff Nancy Jakobs ("plaintiff") filed a Complaint
seeking review of the Commissioner of Social Security's denial of plaintiff's
application for benefits. The parties have filed a consent to proceed before a
United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The
Court has taken both motions under submission without oral argument. See Fed.
R. Civ. P. 78; L.R. 7-15; August 8, 2008 Case Management Order ¶ 5.
///

1   Based on the record as a whole and the applicable law, the decision of the

2   Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3   ("ALJ") are supported by substantial evidence and are free from material error.[1]

4   **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5   **DECISION**

6   On July 7, 2005, plaintiff filed applications for Supplemental Security

7   Income and Disability Insurance Benefits.  (Administrative Record ("AR") 21).

8   Plaintiff asserted that she became disabled on January 1, 2002, due to depression,

9   fibromyalgia, insomnia, mood swings, pain, memory loss and confusion.  (AR

10  167).  The ALJ examined the medical record and heard testimony from plaintiff

11  (who was represented by counsel) on July 23 and September 12, 2007.  (AR 52-

12  115).

13  On September 24, 2007, the ALJ determined that plaintiff was not disabled

14  from January 1, 2002, through the date of the decision.  (AR 30).  Specifically, the

15  ALJ found:  (1) plaintiff suffered from the following severe impairments:

16  fibromyalgia and depression[2] (AR 23); (2) plaintiff did not have an impairment or

17  combination of impairments that met or medically equaled one of the listed

18  impairments (AR 24-25); (3) plaintiff could perform a full range of light work,

19  that is, she could lift and/or carry 20 pounds occasionally and ten pounds

20  frequently, push and pull within the limitations for lifting and carrying, and climb,

21

22  _____

23  [1]The harmless error rule applies to the review of administrative decisions regarding
disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
(9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social

24  Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of

25  application of harmless error standard in social security cases).

26  [2]The ALJ also noted that plaintiff suffered from joint pain and chronic fatigue which were
considered "non-severe impairments."  (AR 23).  Although plaintiff also claimed to suffer from

27  mercury poisoning, the ALJ declined to find that mercury toxicity was a severe impairment.  (AR

28  24).

2

1   balance, stoop, crouch and crawl on an occasional basis (AR 25); (4) plaintiff

2   could perform her past relevant work as an administrative clerk or property

3   manager (AR 30); and (5) plaintiff was not fully credible.  (AR 26).

4        The Appeals Council denied plaintiff's application for review.  (AR 1-3).

5   **III.    APPLICABLE LEGAL STANDARDS**

6        **A.    Sequential Evaluation Process**

7        To qualify for disability benefits, a claimant must show that she is unable to

8   engage in any substantial gainful activity by reason of a medically determinable

9   physical or mental impairment which can be expected to result in death or which

10  has lasted or can be expected to last for a continuous period of at least twelve

11  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

12  § 423(d)(1)(A)).  The impairment must render the claimant incapable of

13  performing the work she previously performed and incapable of performing any

14  other substantial gainful employment that exists in the national economy.  Tackett

15  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

16       In assessing whether a claimant is disabled, an ALJ is to follow a five-step

17  sequential evaluation process:

18       (1)    Is the claimant presently engaged in substantial gainful activity?  If

19              so, the claimant is not disabled.  If not, proceed to step two.

20       (2)    Is the claimant's alleged impairment sufficiently severe to limit

21              her ability to work?  If not, the claimant is not disabled.  If so,

22              proceed to step three.

23       (3)    Does the claimant's impairment, or combination of

24              impairments, meet or equal an impairment listed in 20 C.F.R.

25              Part 404, Subpart P, Appendix 1?  If so, the claimant is

26              disabled.  If not, proceed to step four.

27  ///

28  ///

3

1
2
3

    (4)    Does the claimant possess the residual functional capacity to perform her past relevant work?[3]  If so, the claimant is not disabled.  If not, proceed to step five.

4
5
6
7
8

    (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

9
10

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

11
12
13
14

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

15

**B.**    **Standard of Review**

16
17
18
19
20
21
22
23
24

    Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

25

///

26

---

27
28

    [3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

1    To determine whether substantial evidence supports a finding, a court must

2  "'consider the record as a whole, weighing both evidence that supports and

3  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

4  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

5  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

6  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

7  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

8  **IV.   DISCUSSION**

9       **A.    Plaintiff Is Not Entitled to a Remand To Permit the ALJ to**

10            **Consider New Evidence Submitted to the Appeals Council**

11       Plaintiff argues that she is entitled to remand because the ALJ failed to

12  consider a disability opinion from one of her treating physicians which she

13  submitted to the Appeals Council after the ALJ issued his decision.  (Plaintiff's

14  Motion at 2-3).  This Court disagrees.

15                **1.    Pertinent Facts**

16       In a decision dated September 24, 2007, the ALJ found plaintiff not

17  disabled.  (AR 21-30).  In connection with plaintiff's request for review to the

18  Appeals Council, plaintiff submitted a Residual Functional Capacity Assessment

19  dated January 9, 2008 ("January 9 Report") from treating physician David

20  Mitzner, D.O. ("Dr. Mitzner").  (AR 4, 557-58).

21       In the January 9 Report, Dr. Mitzner stated that plaintiff:  (i) was diagnosed

22  with "PTSD, depression, anxiety, fibromyalgia with chronic fatigue;" (ii) had

23  symptoms including breathlessness, carpal tunnel syndrome, chronic fatigue,

24  depression, irritable bowl syndrome, multiple tender points, muscle weakness,

25  nonrestorative sleep, numbness and tingling, panic attacks, subjective swelling,

26  and "cognitive impairment (esp. with stress/pressure situations of even a minor

27  degree), . . . frequently distraught, [with] crying if PTSD activated;" (iii) could sit

28  or stand only 30 minutes at a time, but could do so for only two hours in an eight-

5

1   hour workday; (iv) would need to walk and/or lay down every 45 minutes and

2   would need to elevate her legs six hours during an eight-hour work day; (v) could

3   not lift or carry weight even less than ten pounds in an eight-hour work day;

4   (vi) could never push, pull or finely manipulate with either hand, with only

5   occasional grasping; (vii) experienced pain in almost every part of her body; and

6   (viii) would likely miss more than three days of work a month due to her medical

7   problems.  (AR 557-58).

8          In denying review, the Appeals Council considered new evidence plaintiff

9   submitted, including Dr. Mitzner's January 9 Report, but determined that the

10  additional evidence "[did] not provide a basis for changing the Administrative

11  Law Judge's decision."  (AR 2).  The Appeals Council noted that its denial of

12  review made the ALJ's decision "the final decision of the Commissioner."  (AR 1,

13  2).

14                    **2.    Analysis**

15         Since the Appeal's Council considered the January 9 Report, this Court also

16  considers such evidence.  Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n.2 (9th

17  Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  To warrant

18  a remand, plaintiff must show that the new evidence is material to determining her

19  disability.  Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).  To be

20  material, the new evidence must bear directly and substantially on the matter in

21  dispute, and there must be a reasonable possibility that the new evidence would

22  have changed the outcome of the administrative hearing.  Id. (citations omitted).

23         In this case, plaintiff fails to demonstrate a reasonable possibility that any

24  opinions expressed in the January 9 Report (that were not already accounted for in

25  the ALJ's decision) would have changed the outcome of the administrative

26  hearing even if the evidence had been timely presented to the ALJ.

27         First, many of the impairments, symptoms and limitations identified in the

28  January 9 Report appear to be drawn solely from treatment notes that themselves

1 are based on plaintiff's own accounts.  (AR 477 (plaintiff's reported symptoms
2 include "stress and poor sleep" and "mentally tired"); 479 ("[symptoms include]
3 some anxiety, [increased] stress, edgy/sweaty, feeling exhausted, pains neck,
4 knees, back, . . . mood swings"); 481 (plaintiff complains of "cognitive function
5 prob[lems], stress, exhaustion"); 482-84 (plaintiff's self history)).  The ALJ noted
6 that treatment records from Dr. Mitzner ("Vintage Medical Group") include
7 "forms and lists which [plaintiff] herself completed regarding her symptoms."
8 (AR 27).  The ALJ would have been justified in rejecting any medical opinions
9 based solely on plaintiff's own accounts of her impairments, symptoms and
10 limitations which the ALJ had already rejected as "not fully credible" (AR 26).
11 Flaten, 44 F.3d at 1464 ("[a]n opinion of disability premised to a large extent upon
12 a claimant's own accounts of his symptoms and limitations may be disregarded
13 where those complaints have been 'properly discounted'").

14      Second, Dr. Mitzner's findings are not supported by the doctor's own
15 treatment notes or objective medical evidence.[4]  The ALJ did consider Dr.
16 Mitzner's notes from his treatment of plaintiff, but found them immaterial to his
17 residual functional capacity determination because the records "[did] not contain
18 any objective evidence to show [plaintiff] has any significant limitations from her
19 mental condition or would be physically unable to meet the demands of light work
20 (Exhibit 20-F [AR 474-500])."  (AR 27).  There is no reasonable possibility the
21 ALJ would be persuaded to change his mind based on the January 9 Report which
22 is based on those same treatment notes.  See Connett v. Barnhart, 340 F.3d 871,
23 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating

24 _____

25      [4]While the January 9 Report contains Dr. Mitzner's diagnosis of "PTSD," the treatment
26 notes show such a diagnosis to be questionable.  (AR 481 (treatment note reads "anxiety
(?PTSD)").  In addition, Dr. Mitzner reports that plaintiff has very significant limitations on her
27 ability to lift weight, grasp, push & pull, and finely manipulate (AR 558), yet there is no evidence
that the doctor conducted any significant objective testing to assess plaintiff's range of motion or
28 strength.  (AR 475, 477, 479, 480, 481).

1   physician's treatment notes "provide no basis for the functional restrictions he

2   opined should be imposed on [the claimant]"); see Tonapetyan v. Halter, 242 F.3d

3   1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinions that

4   are conclusory and brief, or unsupported by clinical findings, or physician's own

5   treatment notes).  Finally, none of the other medical opinions the ALJ found

6   credible, nor any other objective medical findings in the record, support a finding

7   that plaintiff was unable to perform light work for a sustained period of 12

8   months.  (AR 28).  As discussed below, the ALJ correctly noted that there is no

9   evidence in the record documenting that plaintiff had any "ongoing valid medical

10  or mental health issues."  (AR 29).  The ALJ would properly have rejected Dr.

11  Mitzner's opinions on that basis as well.  Batson, 359 F.3d at 1195 (ALJ may

12  discredit treating physicians' opinions that are unsupported by objective medical

13  findings or record as a whole).

14       Plaintiff has not demonstrated that the January 9 Report was material to the

15  ALJ's determination of disability.  Accordingly, a remand on this basis is not

16  warranted.

17           **B.    The ALJ Properly Evaluated Medical Opinion Evidence**

18       Plaintiff contends that the ALJ improperly rejected the opinions of Dr.

19  Brigid Freyne (an internal medicine physician and rheumatologist who was one of

20  plaintiff's treating physicians) expressed in a mental disorder questionnaire form

21  dated September 16, 2005 (AR 28, 242-46).[5]  (Plaintiff's Motion at 4).  This Court

22  disagrees.

23  ///

24  ///

25  ///

---

27       [5]In the September 16 mental disorder questionnaire, Dr. Freyne indicated that plaintiff
28  was "severely depressed," and that plaintiff indicated she had memory and concentration
    problems, isolated herself, had mood swings, and was too fatigued to shop, cook or clean.  (AR
    242-46).

**1.     Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes

---

[6]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to  reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  These standards also apply to opinions of examining physicians.  See Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

## 2.    Analysis

The ALJ rejected Dr. Freyne's opinions for clear, convincing, specific and legitimate reasons supported by substantial evidence.

First, Dr. Freyne was not a mental health specialist, and appeared to have treated plaintiff primarily for fibromyalgia.  (AR 28, 253).  As the ALJ noted, the mental health findings in Dr. Freyne's mental disorder questionnaire were contradicted by other medical evidence in the record.[7]  "[T]he ALJ was entitled to consider the doctor's area of specialty when weighing conflicting medical

---

[7]The ALJ's finding that plaintiff could perform a full range of light work with no psychological limitations was consistent with the opinion of examining psychiatrist Dr. Rodriguez who found plaintiff had few significant mental limitations (AR 28, 275, 269-76), and the consistent report from Dr. Skopec, a non-examining, state-agency psychiatrist who found plaintiff "does not have any significant impairment-related mental limitations") (AR 229, 307, 297-310).

1  opinions." See Kennelly v. Astrue, 313 Fed. Appx. 977, 978 (9th Cir. 2009)[8] (ALJ
2  properly credited nonexamining psychiatrists over examining internal medicine
3  practitioner) (citing 20 C.F.R. § 404.1527(d)(5)); cf. Lester, 81 F.3d at 833 (the
4  ALJ could not discount treating physician's testimony solely because he was not a
5  mental health specialist where physician who specialized in treating patients with
6  chronic pain, nonetheless, provided treatment for the plaintiff's psychiatric
7  impairment).

8      Second, Dr. Freyne's mental health findings seem to rely substantially on
9  plaintiff's subjective reporting.[9]  The ALJ properly rejected Dr. Freyne's opinions
10  to the extent they were based upon plaintiff's own account of symptoms and
11  limitations that the ALJ otherwise found lacking in credibility.  Flaten, 44 F.3d at
12  1464 ("[a]n opinion of disability premised to a large extent upon a claimant's own
13  accounts of his symptoms and limitations may be disregarded where those
14  complaints have been 'properly discounted'").

15      Third, as the ALJ correctly noted, other than such references to plaintiff's
16  own description of her symptoms, Dr. Freyne's mental health opinions find no
17  other support in the doctor's treatment notes.  (AR 247-56).  The ALJ properly
18  rejected Dr. Freyne's mental health opinions on that basis.  Connett, 340 F.3d at
19  875 (treating physician's opinion properly rejected where treating physician's
20  treatment notes "provide no basis for the functional restrictions he opined should
21  be imposed on [the claimant]"); see Tonapetyan, 242 F.3d at 1149 (ALJ need not

23      [8]The Court may cite unpublished Ninth Circuit opinions issued on or after January 1,
24  2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

25      [9]In Dr. Freyne's mental disorder questionnaire, the entry for "Present Illness" describes
26  plaintiff's symptoms in her own words as "'severely depressed, exhausted, in pain.'"  (AR 242).
   Similarly, the entry for "Intellectual Functioning" reads "patient describes memory [and]
27  concentration problems."  (AR 243 (emphasis added)).  The entry for plaintiff's "Affective
   Status" states only that "PT describes depression, anxiety, and history of suicidal attempts."  (AR
28  244).

accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes).

Finally, an ALJ may properly reject a treating physician's opinion that is unsupported by the record as a whole. <u>Batson</u>, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings). As the ALJ correctly noted, there is no evidence in the record documenting that plaintiff has any "ongoing valid . . . mental health issues." (AR 29). Again, the ALJ's finding that plaintiff could perform a full range of light work with no significant psychological limitations was consistent with the opinions of examining psychiatrist Dr. Rodriguez and state-agency psychiatrist Dr. Skopec. (AR 28, 229, 269-76, 297-310). Thus, the ALJ also properly rejected Dr. Freyne's opinions as inconsistent with the overall medical record.

Accordingly, a remand or reversal on this basis is not warranted.

## C.   The ALJ Did Not Materially Err In Determining that Plaintiff Could Perform Her Past Relevant Work

Plaintiff contends that the ALJ erred by failing properly to consider and discuss the mental and physical demands of plaintiff's past relevant work. (Plaintiff's Motion at 7-10). This Court finds that any error in the ALJ's failure more thoroughly to discuss the mental and physical demands of plaintiff's past relevant work was harmless.

### 1.   Relevant Facts

The ALJ, in pertinent part, stated the following regarding plaintiff's ability to perform her past relevant work:

> The claimant is capable of performing past relevant work as an administrative clerk or property manager. These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity.

12

1       In comparing the claimant's residual functional capacity with

2   the physical and mental demands of these jobs, the undersigned finds

3   that the claimant is able to perform them as she actually performed

4   them in the past.  This finding is supported by the testimony of the

5   vocational expert.

6   (AR 30) (internal citation omitted).

7       The vocational expert testified that plaintiff's past relevant work as an

8   administrative clerk was "semiskilled and sedentary," and her work as a property

9   manager was "skilled employment at the light level."  (AR 73).

10      **2.   Relevant Law**

11      At step four of the sequential evaluation process, the Administration may

12  deny benefits when the claimant can perform the claimant's past relevant work as

13  "actually performed," or as "generally" performed.  Pinto v. Massanari, 249 F.3d

14  840, 845 (2001).  ALJs routinely rely on the Dictionary of Occupational Titles

15  ("DOT") in determining the skill level of a claimant's past work.  Terry v.

16  Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20

17  C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job

18  information).  The DOT is the presumptive authority on job classifications.

19  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

20      Although the claimant has the burden of proving an inability to perform her

21  past relevant work, "the ALJ still has a duty to make the requisite factual findings

22  to support his conclusion."  Id. at 844.  To determine whether a claimant has the

23  residual capacity to perform her past relevant work, the ALJ must ascertain the

24  demands of the claimant's former work and then compare the demands with her

25  present capacity.  Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986).  In

26  finding that an individual has the capacity to perform a past relevant job, the

27  determination or decision must contain the following specific findings of fact:

28  (1) a finding of fact as to the individual's residual functional capacity; (2) a

13

1    finding of fact as to the physical and mental demands of the past job/occupation;

2    and (3) a finding of fact that the individual's residual functional capacity would

3    permit a return to her past job or occupation.  SSR 82-62.

4         **3.    Analysis**

5         Plaintiff properly notes, and defendant has not disputed, that the ALJ erred

6    in failing to make findings of fact as to the physical and mental demands of

7    plaintiff's past relevant work, as required by SSR 82-62.  See Pinto, 249 F.3d at

8    844.  The Court concludes, however, that this error was harmless and does not

9    warrant a reversal of the ALJ's decision.

10        First, the ALJ expressly relied upon the testimony of the vocational expert

11   in concluding that plaintiff could return to her past relevant work and took

12   measures to ensure that such testimony was consistent with the DOT and that any

13   inconsistency was clearly expressed on the record.  (AR 30, 73).  A vocational

14   expert's testimony constitutes substantial evidence upon which an ALJ may

15   properly rely.  See Magallanes, 881 F.2d at 756-57.

16        Second, the record reflects that the vocational expert's testimony was

17   consistent with the DOT, which described the specific physical and mental

18   demands of plaintiff's past jobs as generally performed.  Notably, plaintiff does

19   not contend that the vocational expert erred in classifying plaintiff's past relevant

20   work according to the DOT (or the functional demands attributed to such work).

21   Furthermore, review of the DOT shows that plaintiff was capable of performing

22   her past relevant work.  The DOT sections which correspond to plaintiff's past

23   relevant jobs as a property manager and administrative clerk reflect that such jobs

24   involve light work.[10]  As the ALJ properly determined that plaintiff had the

25   residual functional capacity to perform a full range of light work, his assessment

26

27        ───────────────────

28        [10]See DOT §§ 186.117-042 (manager, land development; alternative titles include
     property manager); 219.362-010 (administrative clerk).

14

that plaintiff could perform her past relevant jobs is consistent with the DOT and supported by the record.

For these reasons, the Court concludes that the ALJ's failure to provide specific findings of fact as to the physical and mental demands of plaintiff's past relevant work does not constitute reversible error.

**D.     The ALJ's Residual Functional Capacity Determination Is Supported by Substantial Evidence and Is Free from Material Error**

Plaintiff contends that the ALJ's residual functional capacity determination fails to consider all of plaintiff's limitations and restrictions. (Plaintiff's Motion at 8-9). This Court disagrees.

The ALJ considered and summarized in detail the medical evidence of record. (AR 26-29). Based upon such consideration, the ALJ determined that plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently, can push and pull within the limitations for lifting and carrying, and can climb, balance, stoop, crouch and crawl on an occasional basis. (AR 25). The ALJ thereafter adopted a residual functional capacity assessment for plaintiff which reflected the practical ramifications that flowed from the foregoing limitations. The ALJ concluded plaintiff had the residual functional capacity to perform work at the light exertional level, with no psychological limitations.

The ALJ's residual functional capacity is consistent with and reasonably encompasses any limitations identified by the medical doctors who treated, examined and/or evaluated plaintiff's physical and mental condition. The ALJ gave considerable weight to the findings of Dr. Holmes, a non-examining state-agency consulting physician, who stated that plaintiff "was capable of performing essentially a full range of light work, consistent with the limitations assessed by the existing medical evidence." (AR 28). Dr. Holmes' assessment "considered [plaintiff's] medical impairments, exacerbations, expected response to treatment,

15

1   medication effects, pain and fatigue issues and the expectation that there would be
2   no continuous 12 month period since [plaintiff's] alleged onset date during which
3   she would be unable to function with the [assessed] limitations." (AR 28, 261-
4   68). Similarly, none of the other medical records the ALJ found credible reflected
5   a sustained 12 month period during which plaintiff was unable to perform work at
6   a light exertional level. (AR 29). Dr. Holmes' opinion serves as substantial
7   evidence supporting the ALJ's residual functional capacity determination. <u>Cf.</u>
8   <u>Morgan</u>, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical
9   advisor may serve as substantial evidence when they are supported by other
10  evidence in the record and are consistent with it.").

11      The ALJ also found that there was no credible medical evidence that
12  plaintiff suffered any "ongoing valid . . . mental health issues." (AR 29). The ALJ
13  relied in part on a consultative examination by psychiatrist, Dr. Romualdo
14  Rodriguez, which found that plaintiff suffered from "major depressive disorder,"
15  but had "no more than slight limitations in any area of mental functioning."[11]  (AR
16  28, 275). These records do not identify any sustained *functional* limitations from
17  plaintiff's impairments. "The mere existence of an impairment is insufficient
18  proof of a disability." <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993)
19  (citation omitted).

20      Plaintiff's contention that the ALJ failed to consider all of plaintiff's
21  limitations and restrictions is unavailing. As noted above, Dr. Mitzner's January 9
22  Report which found plaintiff suffered from greater mental and physical limitations
23  was not presented to the ALJ, and the Appeals Council was not required to make
24  any particular evidentiary findings regarding such report. <u>See</u> <u>Gomez v. Chater</u>,
25  74 F.3d 967, 972 (9th Cir. 1996) (Appeals Council not required to make any

---

27      [11]The ALJ also relied on similar findings from the state agency medical consultant who
28  found that plaintiff suffered "no severe mental impairment" at all. (AR 29, 297-310).

1   particular evidentiary finding in rejecting evidence presented after ALJ issued

2   decision), <u>cert. denied</u>, 519 U.S. 881 (1996).  Similarly, as discussed above, the

3   ALJ properly rejected Dr. Freyne's opinions for clear, convincing, specific and

4   legitimate reasons supported by substantial evidence.  Therefore, the ALJ did not

5   err in failing to include the findings from this medical evidence in his residual

6   functional capacity determination.

7       Accordingly, a remand or reversal on this basis is not warranted.

8   **E.    The ALJ's Failure to Consider Lay Witness Evidence Was**

9   **Harmless Error**

10      Plaintiff contends that the ALJ failed properly to consider statements

11  provided by plaintiff's daughter, and failed to provide sufficient reasons for

12  disregarding her statements.  (Plaintiff's Motion at 10-11).  This Court concludes

13  that any error in this respect was harmless.

14      **1.    Pertinent Facts**

15      On July 29, 2005, plaintiff's daughter, Jennifer Jakobs, who lived with

16  plaintiff at the time, completed a function report that reflects her observations

17  regarding plaintiff's alleged impairments and their asserted impact on plaintiff's

18  daily activities.  (AR 176-83).  Plaintiff's daughter stated that plaintiff:  (i) was

19  "tired all the time," "in pain" and did "very little" (AR 176); (ii) could care for

20  pets with her daughter's help (AR 177); (iii) had insomnia, muscle and joint pain,

21  and depression (AR 177); (iv) cooked "rarely" due to fatigue and difficulty with

22  concentration and memory (AR 177, 178); (v) could go out for "fast food" (AR

23  177); (vi) needed reminders to take medicine (AR 178); (vii) could do cleaning

24  and laundry "when capable," but would move slowly due to fatigue (AR 178);

25  (viii) would not do other housework due to fatigue, depression, and pain, and

26  would not do yard work due to "joint and muscle pain" (AR 179); (ix) could drive

27  a car and go out on her own (AR 179); (x) would not shop in stores except for

28  food/necessities because she would get "confused" (AR 179); (xi) was not able to

handle money responsibly other than counting change because she would get disoriented/confused, forget what was owed, and make "many mistakes" (AR 179-80); (xii) was "a recluse," spent no time with others, and did not leave the house for social activities (AR 180); (xiii) had problems getting along with family members because she was "very [depressed], irritable . . . a recluse, [and] ashamed of her limitations (AR 181); (xiv) "used to be very outgoing and social and very physical" (AR 181); (xv) was affected by her illness, injuries or conditions in her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use hands, and get along with others (AR 181); (xvi) had a hard time opening things due to joint pain and pain in her hands (AR 181); (xvii) tired very easily when walking (AR 181); (xviii) had "cognative [sic] problems" and got "confused easily" (AR 181); (xix) did not finish what she started due to "short term memory loss" and fatigue (AR 181); (xx) could not follow instructions well because she was "confused easily" and would forget what she was told (AR 181); (xxi) did not handle stress well and had a lot of fears (AR 182); and (xxii) used an electric cart at the store when she was in pain (AR 182).

The parties do not dispute that the ALJ did not discuss these statements made by plaintiff's daughter.

## 2.   Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's

1  impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness

2  testimony as to claimant's symptoms or how impairment affects ability to work is

3  competent evidence and therefore cannot be disregarded without comment)

4  (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ

5  must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how

6  impairment affects claimant's ability to work).  The standards discussed in these

7  authorities appear equally applicable to written statements.  Cf. Schneider v.

8  Commissioner, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to

9  consider letters submitted by claimant's friends and ex-employers in evaluating

10  severity of claimant's functional limitations).

11       In cases in which "the ALJ's error lies in a failure to properly discuss

12  competent lay testimony favorable to the claimant, a reviewing court cannot

13  consider the error harmless unless it can confidently conclude that no reasonable

14  ALJ, when fully crediting the testimony, could have reached a different disability

15  determination."  Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

16              **3.    Analysis**

17       To the extent the ALJ erroneously failed to discuss the statements contained

18  in the function report plaintiff's daughter completed, any error was harmless.

19       First, the ALJ determined that plaintiff suffered from the severe

20  impairments of depression and fibromyalgia, and the non-severe impairments of

21  joint pain and chronic fatigue.  (AR 23).  To the extent statements by plaintiff's

22  daughter about plaintiff's depression, fatigue, and pain simply corroborated

23  limitations the ALJ already accounted for in his residual functional capacity

24  findings, any error in failing to address those statements was harmless.  See Zerba

25  v. Commissioner of Social Security Administration, 279 Fed. Appx. 438, 440 (9th

26  Cir. 2008) (failure to address husband's cumulative lay testimony harmless error);

27  Rohrer v. Astrue, 279 Fed. Appx. 437, 437 (9th Cir. 2008) (rejecting claimant's

28  contention that ALJ improperly rejected lay witness statement of claimant's

girlfriend where such statement cumulative of statements by claimant which ALJ accepted).[12]

Second, plaintiff's daughter's statements that plaintiff did "very little" and cooked "rarely" due to fatigue, and that plaintiff was a "recluse" who spent no time with others and did not leave the house, are belied by plaintiff's and her daughter's own statements that plaintiff cares for pets, cleans and does laundry, drives a car, is able to go out alone, shops, and goes out regularly for fast food.[13] (AR 177-78, 186-88).  Moreover, the conclusory statements do not reflect any additional limitation in plaintiff's ability to work not already accounted for in the ALJ's residual functional capacity determination.  Similarly, the daughter's conclusory statement that plaintiff suffered from depression did not reveal any additional limitations on plaintiff's ability to perform basic work activities, and could properly be disregarded.[14]

Third, the ALJ found that plaintiff's medically determinable impairments would not reasonably be expected to produce "all of her alleged symptoms."  (AR

---

[12]As indicated in note 8, supra, the Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

[13]Evidence that plaintiff's daughter spends time at home with plaintiff only on her "two days off" and only "when [she] can," and that plaintiff rarely prepares her own meals at home but prefers "fast food," suggests that plaintiff leaves the house regularly on her own to eat.  (AR 176, 177-78, 186-88).  Also, in plaintiff's own function report, she notes that she visits people "once in a while" and will "usually call and talk on the phone."  (AR 189).  This contradicts her daughter's conclusory and unsupported statement that plaintiff is a "recluse."

[14]In the "Information About Abilities" check-box section, plaintiff's daughter checked all but three boxes, indicating that plaintiff's illnesses, injuries, or conditions affect her ability to lift, squat, bend, stand, reach, walk, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use hands, and get along with others.  (AR 181).  However, no doctor has assessed limitations in plaintiff's ability to see.  Moreover, the daughter's vague explanation as to how plaintiff's illnesses, injuries or conditions limit plaintiff with respect to each of the items checked is insufficient to establish any additional limitations on plaintiff's ability to work.  Thus the probative value of these statements is questionable, at best.

26).  Plaintiff's daughter stated that plaintiff suffered from insomnia, cognitive difficulties, memory/cognitive problems, confusion, irritability, inability to handle stress, anti-social feelings and/or has "fears."  (AR 177-82).  To the extent the daughter's statements reflect only symptoms unrelated to an existing medically determinable impairment, any error in failing to address statements about those symptoms was harmless.  Ukolov v. Barnhart, 420 F.3d 1002, 1006 n.6 (9th Cir. 2005).

Accordingly, a remand or reversal on this basis is not warranted.

### F.   The ALJ Did Not Fail Properly To Consider Possible Side Effects From Plaintiff's Medication

Plaintiff contends the ALJ failed properly to consider side effects from her use of prescription medication (e.g., Prozac, Xanax and Trazadone).  (Plaintiff's Motion at 11).  This Court disagrees.

A claimant bears the burden of demonstrating that her use of medications caused a disabling impairment.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir.1985) (claimant failed to meet burden of proving medication impaired his ability to work because he produced no clinical evidence).  Plaintiff offers no objective evidence that her medications affected her in the ways that she claims, let alone that they interfered with her ability to work.  See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (Side effects not "severe enough to interfere with [plaintiff's] ability to work" are properly excluded from consideration).  The only evidence plaintiff points to regarding alleged side effects is contained in Dr. Mitzner's January 9 Report which, as discussed above, was not presented to the ALJ.  It is also worth noting that in her own statements to the Administration, plaintiff stated she suffered no side effects from the three identified medications.  (AR 173, 209).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

1
2

### G.     The ALJ Posed a Complete Hypothetical Question to the
Vocational Expert

3
4
5
6
7
8

Plaintiff contends that a reversal or remand is appropriate because the ALJ erroneously omitted from his hypothetical question Dr. Freyne's opinions pertaining to plaintiff's "panic attacks and other mental and cognitive impairments," and Dr. Mitzner's opinion that plaintiff was precluded from "pushing/pulling and fine manipulations with her right and left hands." (Plaintiff's Motion at 13).  This Court disagrees.

9
10
11
12
13
14
15
16
17

A hypothetical question posed by an ALJ to a vocational expert must set out all the limitations and restrictions of the particular claimant.  Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citing Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)); Embrey, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted).  However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record.  Osenbrock, 240 F.3d at 1163-64 (citation omitted).

18
19
20
21

As discussed above, the ALJ properly rejected Dr. Freyne's opinions as unsupported and inconsistent with the overall medical record, and Dr. Mitzner's opinions were not before the ALJ.  Accordingly, the ALJ properly omitted such opinions from the hypothetical questions posed to the vocational expert.

22

A remand or reversal on this basis is not warranted.

23

### V.     CONCLUSION

24
25

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

26

LET JUDGMENT BE ENTERED ACCORDINGLY.

27

DATED:   September 15, 2010

28

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

22